PIONEER TRUST AND SAVINGS BANK *et al.*, Plaintiffs-Appellants, *v.* LUCKY STORES, INC., d/b/a Eagle Discount Supermarket #242, Defendant-Appellee.

First District (5th Division)    No. 79-1297

Opinion filed December 5, 1980.

Rubinelli & Altieri, of Chicago, for appellants.

Howard E. Gilbert, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by plaintiffs[1] from a finding for defendant in an action for declaratory judgment concerning obligations of the parties under section 18 of the lease of a store by defendant in plaintiffs' shopping center. That section, which is entitled "Signs," is as follows:

> "18. *SIGNS*
> Landlord does hereby agree to erect and maintain at least one (1) free standing sign identifying the Shopping Center in a location mutually agreeable to Landlord and Tenant, and Landlord shall pay for electrical service and electricity for the operation and lighting of said sign. Tenant shall have the right to install, erect and maintain upon the demised premises all signs necessary or appropriate to the conduct of its business, including signs on Tenant's free-standing pylon sign tower referred to in Exhibit C hereto and in the plans and specifications to be prepared pursuant to Section 2 hereof."

The record and the briefs of the parties disclose that two electrical signs had been installed in the shopping center and were in operation on a single tower which had been erected by plaintiffs, who also provided the electrical service to the tower for the operation of both signs. The higher

---

[1] Pioneer Trust and Savings Bank, under Land Trust No. 11056 (Lessor), and Salvatore Di Mucci, sole beneficiary under the trust, will be termed as plaintiffs in this opinion.

of the two, which identified the shopping center, was the freestanding sign mentioned in section 18 of the lease. It was put up by defendant, and plaintiffs erected the owner sign—which identified its business. It appears that both signs became nonfunctional because of a power failure due to an electrical cable defect and, when defendant failed to respond to plaintiffs' requests for restoration of electrical service, defendant retained an electrical contractor to repair the defect. It then deducted the cost thereof, in the amount of $2,132.53, from its rent.

Plaintiffs filed a complaint for declaratory judgment, alleging in pertinent part that it was the responsibility of defendant to repair the defect and requesting that the court make a declaration as to the rights of the parties concerning the "repair of structural breaks in maintaining the free standing sign * * * ." The trial court ordered "[t]hat the provisions of section 18 of the lease requiring 'the Landlord shall pay for electrical service and electricity' is clear and unambiguous and therefore provides that the Landlord [plaintiffs] shall pay for the repairs of the electricity, electrical service and cable for said signs involved in this case."

On motion of plaintiffs, that order was vacated and they were granted leave to file an amended complaint, which contained substantially the same allegations as their original complaint but also asserted that defendant owed plaintiffs various sums of money under the lease— including rent. The amended complaint requested only that the court "determine whether defendant has violated the terms and provisions of said lease." Subsequently, plaintiffs filed an amendment to the amended complaint, asserting in substance that section 18 was orally modified "by mutual consent and overt act" to require defendant to keep the sign it installed in good repair and to pay the electricity and maintenance thereof.

The trial court entered an order[2] without an evidentiary hearing providing that under section 18 it was the obligation of plaintiffs "to provide electricity and electrical service for Defendant's sign" and "to make repairs and maintain the electricity and electrical service for said sign." Pursuant thereto, the court ordered defendant to refund $549.42 of the $2,132.53 it had deducted from the rent, and it also dismissed without prejudice all other matters in the amended complaint which did not relate to section 18 of the lease. This appeal followed from that order.

OPINION

Plaintiffs' primary contention is that the trial court erred in declaring it was plaintiffs' responsibility to repair defendant's sign without hearing evidence on the issues of fact.

---

[2] The order was entered on the hearing of "Defendant's Motion to Dismiss Amended Complaint and Amendment thereto," but it appears that the motion was never ruled upon.

The entry of a declaratory judgment is authorized "in cases of actual controversy" (Ill. Rev. Stat. 1977, ch. 110, par. 57.1), which has been interpreted to mean a concrete dispute, admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in determination of the controversy or some part thereof (*Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375, 362 N.E.2d 298).

In the instant case, the actual controversy appearing in the pleadings and discussed in the briefs concerns the responsibility of the parties under section 18 of the lease for the repair of the electrical cable defect. Without an evidentiary hearing, the trial court found that it was plaintiffs' obligation to do so.

Plaintiffs' position on appeal is unclear, but in their brief they state that they should have been permitted to present evidence "to ascertain the intention of the parties under the lease." It thus appears that they are contending that section 18 was ambiguous as to which party was responsible for the repair of the cable break, and that the trial court should have heard evidence as to the intent of the parties in that regard.

Initially, we note that the rules concerning the construction of written contracts are applicable to written leases. (*Walgreen Co. v. American National Bank & Trust Co.* (1972), 4 Ill. App. 3d 549, 281 N.E.2d 462; *O'Fallon Development Co. v. Reinbold* (1966), 69 Ill. App. 2d 169, 216 N.E.2d 9.) Thus, if a lease is unambiguous and contains no uncertain terms, its interpretation is a question of law for the court (see *Modern Tackle Co. v. Bradley Industries, Inc.* (1973), 11 Ill. App. 3d 502, 297 N.E.2d 688; 12 Ill. L. & Prac. *Contracts* §246 (1955)), which will not then resort to rules of construction (*Kimes v. Rogers* (1975), 25 Ill. App. 3d 1089, 324 N.E.2d 201; *Kelly v. Terrill* (1971), 132 Ill. App. 2d 238, 268 N.E.2d 885). As stated in *First National Bank v. Victor Comptometer Corp.* (1970), 123 Ill. App. 2d 335, 341, 260 N.E.2d 99, 102, "An ambiguous contract is one capable of being understood in more senses than one; an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." (See also 12 Ill. L. & Prac. *Contracts* §211 (1955).) However, whether an ambiguity exists is a question of law to be initially determined by the court before any extrinsic evidence is received (*Gaffney v. William J. Burns Detective Agency International, Inc.* (1973), 12 Ill. App. 3d 476, 299 N.E.2d 540; 12 Ill. L. & Prac. *Contracts* §247 (1955)); but, where a court determines that an ambiguity exists, extrinsic evidence may be introduced by the parties and considered by the court in ascertaining the true meaning of the contract (*Standard Steel & Wire Corp. v. Chicago Capital Corp.* (1975), 26 Ill. App. 3d 915, 326 N.E.2d 33; *Joseph v. Joseph* (1973), 15 Ill. App. 3d 714, 305 N.E.2d 19).

In the instant case, we think that section 18 of the lease is unclear as to

who was responsible for the cable repairs and, more specifically, we are of the belief that the language does not support the finding of the trial court that plaintiffs were obligated "to provide electricity and electrical service for *Defendant's* sign" (emphasis added); and "to make repairs and maintain electricity and electrical service for said sign." As we view that section, it contains two provisions—(1) that plaintiffs were to erect and maintain a freestanding sign, identifying the shopping center (which they did) and were to pay for the electrical service and electricity for the operation and lighting of said sign; and (2) that defendant had the right "to install, erect and maintain other signs necessary for its business, including signs on Tenant's free-standing pylon sign tower referred to in exhibit C hereto and in the plans and specifications to be prepared pursuant to section 2 hereof."[3] Exhibit C contains no reference to "Tenant's free-standing pylon sign tower" but does state that plaintiffs' work shall include the furnishing and complete installation of the following: "(1) Sign tower structure and foundation with necessary *primary* electrical. Sign will be furnished and installed by Tenant." While it is clear from the above that plaintiffs were required to pay for the electrical service and electricity for its freestanding sign, we see no language in section 18 justifying the finding of the court that plaintiffs were required to provide electricity and electrical service for defendant's sign or to make repairs and maintain electricity and electrical service for that sign.

We are thus of the opinion that the lease is unclear as to which party was responsible for the repair of the cable defect and that the trial court should have conducted an evidentiary hearing to determine the intent of the parties in that respect.

In the light of this holding, the remaining portion of the order appealed from which, in effect, approved the deduction from rent by defendant of $1,583.11 of the expense incurred in the repair of the cable defect, must be vacated for determination on remandment.[4]

Plaintiffs also contend that the trial court improperly dismissed their amended complaint "as it pertains to matters not relating to section 18 * * * ." The amended complaint asserted claims for additional monies due—among other things, rent, insurance, electricity, and a "common area charge." In that order appealed from, the court dismissed without prejudice those additional claims. In their brief, however, plaintiffs do not support their contention by argument or citation of authority. We will thus not consider this contention, as Supreme Court Rule 341(e)(7) (Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)(7) provides, in pertinent part, that "[p]oints not argued [in appellants' brief] are waived." (See also *Collins v.*

---

[3] No plans and specifications appear in the record.

[4] The record is silent as to the reason the trial court made the implicit finding that $549.42 of defendants' $2,132.53 rent deduction was improper.

*Westlake Community Hospital* (1974), 57 Ill. 2d 388, 312 N.E.2d 614; 2 Ill. L. & Prac. *Appeal and Error* §557 (1953).) In any event, in view of our holding that this matter is to be remanded, we conclude that no prejudice has resulted as the matter will still be before the trial court.

Accordingly, the order appealed from is reversed, and this matter is remanded for further proceedings consistent with the content of this opinion.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.