RAFAEL DELAPAZ et al., Plaintiffs, v. SELECTBUILD CONSTRUCTION, INC., d/b/a RCI Construction, Inc., et al., Defendants (Selectbuild Construction, Inc., d/b/a RCI Construction, Inc., Third-Party Plaintiff; Dason Masonry, Inc., Third-Party Defendant; Touhy and Touhy, Ltd., Petitioner-Appellee; Stephan Zouras, LLP, Respondent-Appellant).

First District (4th Division)  No. 1—08—2072

Opinion filed September 30, 2009.

Esposito & Staubus, of Burr Ridge (Bradley K. Staubus, of counsel), for appellant.

Touhy, Touhy, Buehler & Williams, LLP, of Chicago (Timothy J. Touhy and Robert E. Williams, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

The law firm of Stephan Zouras, LLP, appeals the trial court's adjudication of attorney fees between Stephan Zouras as successor attorneys and Touhy & Touhy, Ltd., as discharged attorneys. Stephan Zouras claims that the trial court erred in awarding to Touhy & Touhy the contingent fee less the fees earned by Stephan Zouras under a *quantum meruit* theory. Stephan Zouras maintains that the trial court erred in adopting the comparison/apportionment approach to apportion the attorney fees. Stephan Zouras also claims that Touhy & Touhy failed to provide sufficient evidence to support the award of attorney fees under a *quantum meruit* theory. For the reasons that follow, we affirm.

A negligence claim is the underlying action in this appeal. On September 22, 2004, Rafael DeLapaz was working on a construction site as a bricklayer when he fell through a hole falling approximately 14 feet onto a concrete floor. While James Zouras (Zouras) worked at Touhy & Touhy, a referring attorney told Rafael to contact Zouras regarding the negligence cause of action. The referring attorney was

to receive 33¹/₃% of the fees. Rafael and his wife Magdalena (collectively referred to herein as DeLapaz) entered into a contingency agreement with Touhy & Touhy in February 2006 *to commence an action* to recover for the injuries Rafael suffered from the September 22, 2004, fall. Zouras was the only attorney at Touhy & Touhy who communicated with DeLapaz. Touhy & Touhy did not maintain time records for personal injury cases, which would recover attorney fees on a contingency basis.

Touhy & Touhy filed the construction negligence case on DeLapaz's behalf in February 2006. During the time Zouras worked at Touhy & Touhy and on DeLapaz's case, he met with the client, prepared the complaint, appeared at status hearings, modified discovery answers and exchanged correspondence with defense counsel and plaintiffs. Touhy & Touhy terminated Zouras and Ryan Stephan as employees of the firm on May 21, 2007. Zouras and Stephan then formed the law firm of Stephan Zouras, LLP, and on June 14, 2007, that firm substituted as attorneys for DeLapaz and filed its appearance in the case. The underlying case settled for $275,000 on August 23, 2007, resulting in a dismissal of the case with prejudice.

On September 11, 2007, Touhy & Touhy filed a motion to adjudicate attorneys' liens and escrow funds, conduct discovery and set for an evidentiary hearing. Stephan Zouras filed a verified response on September 26, 2007. In an order drafted by Stephan Zouras and approved by Touhy & Touhy, the parties agreed to certain disbursements from the settlement amount, leaving a remaining balance of $82,500. Stephan Zouras filed a supplemental response on November 2, 2007. The trial court entered an order on November 16, 2007, finding that Touhy & Touhy "is entitled to its original contract fee of one-third of the settlement, less the amount of fees [Stephan Zouras] is entitled to on a *quantum meruit* basis." Zouras filed an affidavit dated November 16, 2007, stating that since May 21, 2007, he performed the vast majority of the work in the underlying case. Zouras also attached an exhibit to the affidavit that itemized the time expended by Stephan Zouras working on the case and reflected a $300 hourly rate for the work performed by Zouras. Timothy Touhy filed an affidavit dated December 11, 2007, stating in part that approximately five hours reflected in Stephan Zouras's invoice of services rendered in the DeLapaz case were duplicate of services performed while Zouras was employed at Touhy & Touhy. Zouras filed a responsive affidavit dated December 24, 2007, refuting the duplication of hours. The trial court entered an order dated January 9, 2008, allocating $79,208.83 to Touhy & Touhy with instructions to disburse $26,402.78 to the refer-

ring attorney.[1] The trial court also allocated $3,291.67 to Stephan Zouras with instructions to disburse $1,097.22 to the referring attorney. Stephan Zouras's award was based upon 26.25 hours at $300 per hour less deductions for duplicate work. Stephan Zouras timely appealed.[2]

This appeal involves the review of the trial court's allocation of attorney fees between a discharged and successive law firm. A trial court's award of attorney fees is reviewed adopting an abuse of discretion standard. *In re Marriage of Bussey*, 108 Ill. 2d 286, 299, 483 N.E.2d 1229, 1235 (1985). A trial court abuses its discretion if "no reasonable person would take the view adopted by the trial court." *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 651, 895 N.E.2d 1025, 1037 (2008).

Stephan Zouras first contends on appeal that the trial court erroneously applied the comparison/apportionment standard to apportion attorney fees between Stephan Zouras and Touhy & Touhy. Stephan Zouras claims that the trial court erred by comparing the amount of work performed by Touhy & Touhy and Stephan Zouras and finding that Touhy & Touhy performed most of the work prior to settlement, and that the trial court then erroneously ruled that Touhy & Touhy was entitled to the contingent fee. Stephan Zouras maintains that the proper standard that should have been used to compute the attorney fees was to award Stephan Zouras the contract contingent fee and require Touhy & Touhy as discharged attorneys to prove its fees on a *quantum meruit* basis instead of applying the comparison/apportionment approach. Stephan Zouras also claims that no offer for settlement was made prior to Touhy & Touhy being discharged, that Touhy & Touhy did not perform much work on the file and that any tasks performed by Touhy & Touhy were ministerial in nature. Stephan Zouras further points to the trial court's recognition that the case was settled and dismissed before much of the legal work was performed. Stephan Zouras maintains that the trial court adopted the

---

[1] In allocating the fees to Touhy & Touhy and Stephan Zouras, the trial court noted that Stephan Zouras in its verified response stated that it agreed with DeLapaz to accept 30% of the amount recovered as attorney fees whereas the agreement with Touhy & Touhy was to accept $33^{1}/_{3}\%$ of the recovery as attorney fees. The trial court ruled that each firm would absorb one-half of the reduction in the attorney fees from $33^{1}/_{3}\%$ to 30%.

[2] Touhy & Touhy filed a motion to strike a portion of the argument contained in the reply brief and the supplemental appendix attached to the reply brief. Stephan Zouras filed a response, and the motion was taken with the case. After reviewing both the motion to strike and the response, the motion to strike is hereby granted.

incorrect legal standard of comparison/apportionment to allocate the attorney fees resulting in the erroneous award of the contingent fee to Touhy & Touhy and *quantum meruit* fees to Stephan Zouras.

Touhy & Touhy responds that because no written contract exists between Stephan Zouras and DeLapaz, Stephan Zouras is only entitled to fees based upon a *quantum meruit* theory. Touhy & Touhy claims that the trial court did not err in its award of attorney fees because the trial court recognized that the case settled before much of the legal work required in comparable cases would have been performed and that Touhy & Touhy's attorneys and legal assistants performed the overwhelming amount of the work. Touhy & Touhy contends that the trial court did not err in ruling that Touhy & Touhy was entitled to the contingent fee because it did the "overwhelming amount" of the legal work that resulted in the settlement as compared to the 26.25 hours Stephan Zouras worked on the case. Touhy & Touhy further claims that because Stephan Zouras did not have a fee contract with DeLapaz providing it with a percentage of the recovery as attorney fees, Stephan Zouras was only entitled to the *quantum meruit* fee based upon the number of compensable hours worked, which is consistent with the trial court's award.

■■ A client may discharge his attorney with or without cause at any time, even in a contingency-fee-based agreement. *Thompson v. Hiter*, 356 Ill. App. 3d 574, 580-81, 826 N.E.2d 503, 509 (2005). When the attorney is discharged, the contingent fee contract no longer exists and the contingency term is no longer operative. *Thompson*, 356 Ill. App. 3d at 581, 826 N.E.2d at 509. A discharged attorney, however, is entitled to payment for the services rendered prior to discharge on a *quantum meruit* basis. *Thompson*, 356 Ill. App. 3d at 580, 826 N.E.2d at 509. The term *"quantum meruit"* literally means " 'as much as he deserves.' " *Much Shelist Freed Denenberg & Ament, P.C. v. Lison*, 297 Ill. App. 3d 375, 379, 696 N.E.2d 1196, 1199 (1998), quoting *First National Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 365, 688 N.E.2d 1179 (1997). Several factors are considered in determining the *quantum meruit* amount for services rendered, which include "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client." *Will v. Northwestern University*, 378 Ill. App. 3d 280, 304, 881 N.E.2d 481, 504-05 (2007). If an attorney performed much of the work on a case before discharge and a settlement immediately follows the discharge, the factors used to determine a reasonable fee " 'would justify a finding that the entire

contract fee is the reasonable value of services rendered.' " *Will*, 378 Ill. App. 3d at 304, 881 N.E.2d at 505, quoting *Wegner v. Arnold*, 305 Ill. App. 3d 689, 693, 713 N.E.2d 247 (1999).

Here, the trial court noted that "the settlement was reached before any depositions in this case were taken and before any substantive motion had been filed." The trial court continued that "this case was settled and dismissed with prejudice before much of the legal work that would have to be done on a case like this had been performed, and the overwhelming amount of that work had been done by attorneys and legal assistants employed by Touhy." The trial court noted that while Zouras was employed at Touhy & Touhy he met with the clients, drafted the complaint and requested from the workers' compensation carrier a list of medical expenses. The trial court also noted that after Touhy & Touhy was discharged as attorneys, Stephan Zouras appeared at three case management conferences and agreed to and prepared for a pretrial settlement conference on August 23, 2007, where the clients agreed to settle the case for $275,000. The trial court ruled that "because most of the work performed in this case prior to settlement was done by Touhy employees while Touhy was the attorney of record, Touhy is entitled to the contract fee of one third of the settlement amount less the amount of attorney fees Stephan Zouras is entitled to on a *quantum meruit* basis."

The trial court's decision to award Touhy & Touhy the contingent fee less fees to Stephan Zouras calculated on a *quantum meruit* basis is supported by the Illinois Supreme Court's decision in *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 399 N.E.2d 969 (1979). In *Rhoades*, the Illinois Supreme Court concluded that a discharged attorney "is entitled to be paid on a *quantum meruit* basis a reasonable fee for services rendered before discharge." *Rhoades*, 78 Ill. 2d at 230, 399 N.E.2d at 975. The *Rhoades* court also approved of the California Supreme Court's reasoning in *Fracasse v. Brent*, 6 Cal. 3d 784, 494 P.2d 9, 100 Cal. Rptr. 385 (1972), which stated that "in cases in which an attorney who has done much work is fired immediately before a settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." *Rhoades*, 78 Ill. 2d at 230, 399 N.E.2d at 975, citing *Fracasse v. Brent*, 6 Cal. 3d 784, 494 P.2d 9, 100 Cal. Rptr. 385 (1972); see *Wegner v. Arnold*, 305 Ill. App. 3d at 693-94, 713 N.E.2d at 250-51. Also, in *Wegner v. Arnold*, 305 Ill. App. 3d at 697, 713 N.E.2d at 252, this court applied the principle set forth in *Rhoades* and stated that "under *Rhoades* an attorney discharged immediately prior to settlement may be entitled to the contract fee as the reasonable value of his services." In *Wegner*, the discharged at-

torney worked on the case from September 16, 1996, to August 28, 1997. *Wegner*, 305 Ill. App. 3d at 691, 713 N.E.2d at 249. The successor attorney filed a motion for substitution of counsel on September 30, 1997. *Wegner*, 305 Ill. App. 3d at 691, 713 N.E.2d at 249. Two days before discharging the attorney in *Wegner*, the defendant's attorney recommended to the defendant's insurer to settle the case offering the full $100,000 policy. *Wegner*, 305 Ill. App. 3d at 691-92, 713 N.E.2d at 249. A formal settlement offer in *Wegner* was made on November 17, 1997, which was approximately 2½ months after the original attorney was discharged. *Wegner*, 305 Ill. App. 3d at 692, 713 N.E.2d at 249. This court in *Wegner* remanded the case, instructing the trial court to award the discharged attorney the contract fee less the amount to be awarded to the successor attorney based upon a *quantum meruit* calculation. *Wegner*, 305 Ill. App. 3d at 697, 713 N.E.2d at 253.

The trial court did not err in relying on *Rhoades* and *Wegner* as these cases are dispositive of the instant case. Here, after considering the necessary factors in awarding attorney fees, the trial court concluded that based on the nature of this case and the time and labor required in litigating similar cases, a significant portion of the work remained to be completed before the case was settled. The trial court also considered the services provided by attorneys employed by Touhy & Touhy before the firm was discharged and concluded that the professionals employed by the firm performed most of the work prior to settlement of the case. Also, the underlying complaint was filed by Touhy & Touhy on July 17, 2006, and the case was settled on August 23, 2007, approximately two months after Stephan Zouras was substituted as attorney in the case. When Zouras worked at Touhy & Touhy, he was expecting a settlement offer from a nominal defendant, and in anticipation of the settlement offer, he drafted a demand letter on May 16, 2007. The trial court also reviewed the docket sheet in the underlying case and considered a chart prepared by Touhy & Touhy detailing the nature of the work completed by Touhy & Touhy and by Stephan Zouras. Having decided that Touhy & Touhy performed the bulk of the work prior to discharge based on the amount and nature of the work performed, the trial court ruled that Touhy & Touhy should receive the contingent fee less the fees allocable to Stephan Zouras based upon a *quantum meruit* computation. This approach has been previously approved of and adopted by the Illinois Supreme Court in *Rhoades* and by this court in *Wegner*.

■ Stephan Zouras contends that the trial court erroneously applied the comparison/apportionment approach to award attorney fees, which has been previously rejected by this court in *Susan E. Loggans & Associates v. Estate of Magid*, 226 Ill. App. 3d 147, 589 N.E.2d 603

(1992), and *Johns v. Klecan*, 198 Ill. App. 3d 1013, 556 N.E.2d 689 (1990). The comparison/apportionment approach entails comparing the services provided by a discharged attorney with the services provided by the successor attorney and then awarding the portion of the recovery allocable to attorney fees to the attorneys based on the ratio of work performed by each attorney. See *Susan E. Loggans*, 226 Ill. App. 3d at 162, 589 N.E.2d at 612; *Johns*, 198 Ill. App. 3d at 1021, 556 N.E.2d at 694. The trial court, however, did not adopt such an approach in allocating the attorney fees. The trial court considered the nature of the case, the time involved, the labor involved and the amount of worked performed by the two firms and concluded that Touhy & Touhy performed much of the work. After reaching that conclusion, the trial court then awarded Touhy & Touhy the contract fee less the fees earned by Stephan Zouras based upon a *quantum meruit* calculation. The trial court did not award attorney fees based upon a percentage of work performed by each attorney. Here, the trial court employed the exception to the general rule that a discharged attorney receives fees for services rendered prior to discharge based upon a *quantum meruit* basis. This decision still upholds the application of the general rule, but the specific facts of the instant case support the trial court's exercise of discretion to adopt the exception to the general rule and award the discharged firm the contingent fee since that firm performed much of the work completed to date and settlement of the case occurred shortly after discharge. The trial court's decision was founded upon fairness and equitable principles given the facts of this case and that the contingent fee is the amount that Touhy & Touhy should receive as the reasonable value of services rendered to DeLapaz. Since the trial court's methodology used in awarding the attorney fees is supported by Illinois case law, this court cannot conclude that "no reasonable person would take the view adopted by the trial court." *Heroy*, 385 Ill. App. 3d at 651, 895 N.E.2d at 1037. As such, the trial court did not abuse its discretion by awarding Touhy & Touhy the contingent fee less fees allocable to Stephan Zouras calculated based upon a *quantum meruit* theory.

Moreover, not only is the record void of a written contingency fee contract between Stephan Zouras and DeLapaz, but the record also does not include reference to the existence of such a written agreement. Stephan Zouras's verified response states that "Stephan Zouras, LLP agreed to accept a 30% contingency fee." The verified response, however, does not include facts reflecting the existence of a written agreement with DeLapaz. Stephan Zouras does not on appeal dispute the existence of a written contract between Touhy & Touhy and DeLapaz. The lack of facts indicating the existence of a written

contract between Stephan Zouras and DeLapaz further supports the trial court's award of fees to Stephan Zouras computed under a *quantum meruit* basis. See generally *Domenella v. Domenella*, 159 Ill. App. 3d 862, 866-67, 513 N.E.2d 17, 19 (1987).

Stephan Zouras next contends on appeal that Touhy & Touhy failed to meet its burden of establishing its fees under a *quantum meruit* basis. Stephan Zouras maintains that Touhy & Touhy failed to present evidence regarding the amount of time that any employee at Touhy & Touhy spent on the matter prior to discharge and evidence relating to the factors considered in awarding attorney fees under a *quantum meruit* theory. Since this court concluded that the trial court did not abuse its discretion in its award of attorney fees, we need not address this contention. Also, Stephan Zouras's contentions raised in this issue are subsumed by the contentions it raised in the first issue on appeal.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

O'BRIEN and NEVILLE, JJ., concur.